UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| SCOTT TYLER | ) | Case No. |
| 1616 Roselawn Rd. | ) | |
| Mayfield, Ohio 44124 | ) | Judge |
| | ) | |
| And | ) | |
| | ) | |
| OWEN McGREW | ) | **CLASS ACTION COMPLAINT** |
| 7304 Pine Woods Way | ) | |
| Olmsted Falls, Ohio 44138 | ) | **JURY DEMAND ENDORSED HEREIN** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FANDUEL, INC. | ) | |
| 1375 Broadway 6th Floor | ) | |
| New York, New York 10018 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| DRAFTKINGS, INC., | ) | |
| 225 Franklin Street, 26th Floor | ) | |
| Boston, Massachusetts 02110 | | |

Defendants

**CLASS ACTION COMPLAINT**

Plaintiffs Scott Tyler and Owen McGrew ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against FanDuel, Inc. ("FanDuel") and DraftKings, Inc. ("DraftKings"), (collectively "Defendants"), and states as follows:

## NATURE OF THE CASE

1.      This is a class action complaint against FanDuel and DraftKings, two companies operating Daily Fantasy Sports ("DFS") websites in a manner that violates Ohio law.

2.      Plaintiffs bring this action on their own behalf and on the behalf of an Ohio class of persons who, like Plaintiffs, have sustained ascertainable losses arising out of FanDuel's and DraftKing's systematic and continued violation of the Ohio Revised Code and various criminal laws.

3.      FanDuel and DraftKings are each operating an illegal online sports betting business within the State of Ohio.

4.      FanDuel and DraftKings define their sports betting scheme as DFS in a specious attempt to circumvent Ohio law which expressly prohibits profiting from a "game of chance," which includes "…or other game in which a player gives anything of value in hope of gain, the outcome of which is determined largely by chance, but does not include bingo."[1]

5.      FanDuel and DraftKings sports betting contests are based upon the performance of a team and individuals that participate in NCAA college football, NCAA college basketball, NFL, NBA, MLB and NHL.

6.      In traditional fantasy sports leagues contestants draft their teams before the season, maintaining the same core roster for months.

7.      In contrast to season-long fantasy sports, FanDuel and DraftKings accept wagers from bettors for various sporting events using a scheme they created that assigns

---

[1] Ohio Revised Code §2915.01(D)

values (points) based upon the performance of athletes and teams engaged in amateur and professional athletic competitions.

8.      After the sporting events are concluded, FanDuel and DraftKings calculate a score using the scheme they created that awards points based upon the various individual college and professional athletes' performance and pays bettors that have the highest total number of points.

9.      Bettors select an entry fee, which is up to $5,000, and the number of the games or teams they wish to play. If their roster generates more points than their rivals on that day or week, they win all the money in the pot, minus FanDuel's and DraftKing's average 6.5% cut.

10.     Recently, lawmakers have scrutinized FanDuel's and DraftKing's business model and operations, alleging substantial similarities between FanDuel and DraftKings and online poker, and other gambling websites.

11.     FanDuel and DraftKings claim, in error, that their bookmaking operations were made legal by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA").

12.     DraftKings, for example, misrepresents that DFS is a game of skill – not chance, and thus legal: "The legality of daily fantasy sports is the same as that of season long fantasy sports. Federal Law and 45 of the 50 US state allow skill based gaming. Daily fantasy sports are a skill game and are not considered gambling."2

13.     In referring to FanDuel (and likely DraftKings) former Congressman Jim Leach stated that his anti-gambling act, the UIGEA, was supposed to stop gambling on the internet – not promote it.

---

2 See DraftKings.com

14.     Former Congressman Leach told the Associated Press: "There is no credible way fantasy sports betting can be described as not gambling." "Only a sophist can make such a claim." The federal regulation is codified at 31 U.S.C. 5361 *et seq*. The Act expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gambling within the United States.[3]

15.     The Federal Bureau of Investigation and the Department of Justice are also probing whether the business model of DFS operators like FanDuel and DraftKings violates this and other federal laws.

16.     On October 15, 2015, the Nevada Gaming Control Board ("NGCB") ordered FanDuel and DraftKings to cease their operations in the State of Nevada, because their operations constitute gambling and they need a gambling license to continue operations in that state.[4]

17.     A day after the NGCB issued its Notice, the State of Nevada Office of the Attorney General ("NOAG") offered its legal analysis, concluding that "In short, daily fantasy sports constitute sports pools and gambling games. They may also constitute lotteries, depending on the test applied by the Nevada Supreme Court. As a result, pay-to-play daily fantasy sports cannot be offered in Nevada without licensure."[5]

18.     FanDuel's and DraftKing's operations are also unlawful under Ohio's criminal provisions.

19.     FanDuel and DraftKings define their sports betting schemes as DFS in a deceptive attempt to circumvent Ohio Revised Code §2915.01(D), which expressly prohibits

---

[3] 31 U.S.C. 5361 §5361(b).
[4] See NGCB October 15, 2015 Notice, attached hereto as <u>Appendix 1</u>.
[5] See NOAG October 16, 2015 Legal Analysis, attached hereto as <u>Appendix 2</u>.

profiting from a "game of chance," which includes "…or other game in which a player gives anything of value in hope of gain, the outcome of which is determined largely by chance, but does not include bingo."

20. Gambling in Ohio is made a criminal offense under Ohio Revised Code §2915.02, which provides in relevant part:

(A)    No person shall do any of the following:

…[.]

(2)    Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance[.]

…

(F)    Whoever violates this section is guilty of gambling, a misdemeanor of the first degree. If the offender previously has been convicted of any gambling offense, gambling is a felony of the fifth degree.

21. The term "person," as used in R.C. 2915.02, includes, among other things, a for-profit corporation.

22. A violation of R.C. 2915.02(A)(2) is predicated upon the existence of either a scheme of chance or game of chance. *See generally* R.C. 2915.01(E) (as used in R.C. Chapter 2915, a "game of chance conducted for profit" is "any game of chance designed to produce income for the person who conducts or operates the game of chance, but does not include bingo."). For purposes of R.C. 2915.02, the terms "scheme of chance" and game of "chance" are defined as follows:

(C)  "Scheme of chance" means a slot machine, lottery, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine, or a pool not conducted for profit.

(D)  "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

23.     Thus, except as provided in R.C. 2915.02, any scheme or game in which a participant gives consideration for a chance to win a prize is a scheme of chance or a game of chance for purposes of gambling prohibitions established by R.C. 2915.02(A)(2). And, the essential ingredient that differentiates merely playing a game for amusement and playing a game for amusement that constitutes gambling, is whether the outcome is determined in whole or in part by chance. *Pickaway County Skilled Gaming, LLC v. Cordray*, 183 Ohio App. 3d 390; 2009-Ohio-3483; 917 N.E.2d 305; 2009 Ohio App. LEXIS 3025.

24.     Under Ohio law, a person conducts a "lottery" for purposes of Article XV, §6 of the Ohio Constitution when the person operates a "scheme whereby a monetary consideration is paid and the winner of the prize is determined by lot or chance." See, *State ex rel. Gabalac v. New Universal Congregation of Living Souls*, 55 Ohio App. 2d 96, 97, 379 N.E.2d 242 (Summit County 1977): *accord Troy Amusement Co. v. Attenweiler*, 64 Ohio App. 105, 28 N.E.2d 207 (Miami County 1940), *aff'd*, 137 Ohio St. 460, 30 N.E.2d 799 (1940); 1967 Op. Att'y Gen. No. 67-064 at 2-111.

25.     In addition to criminal conduct, FanDuel's and DraftKing's operations violate Ohio Revised Code §3763.

26.     Persons, like Plaintiffs herein and the putative class, can seek to recover damages from FanDuel and DraftKings in the form of restitution and lost wagers.

27.     Pursuant to O.R.C. 3763.01(A) <u>Gaming contracts void</u>: All promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon  a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void.

28.     Pursuant to O.R.C. 3763.02 <u>Money lost at games may be recovered - exceptions</u> : If a person, by playing a game, or a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit.

29.     Pursuant to O.R.C. 3763.03 <u>Sufficiency of allegations in pleading</u>: In the prosecution of an action under section 3763.02 of the Revised Code, the plaintiff need only allege that the defendant is indebted to the plaintiff for, or received to the plaintiff's use, the money so lost and paid, or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him, without setting forth the special matter.

7

30.     Pursuant to O.R.C. 3763.04 <u>Suit by third party</u>: If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

31.     Plaintiff and the putative class are entitled, as a matter of law, to recover the money they lost, and in addition, are entitled to any and all fees that inured to FanDuel and DraftKings on account of the contracts being void.

### PARTIES, JURISDICTION AND VENUE

32.     Plaintiff, Scott Tyler, is a resident of Cuyahoga County, Ohio, and is a citizen of Ohio. He brings this action on behalf of himself individually, and on behalf of a class of persons similarly situated as described in the class definition below.

33.     Plaintiff, Owen McGrew is a resident of Cuyahoga County, Ohio, and is a citizen of Ohio. He brings this action on behalf of himself individually, and on behalf of a class of persons similarly situated as described in the class definition below.

34.     Defendant FanDuel, Inc. is a Delaware corporation with its principal place of business in New York, New York.

35.     Defendant DraftKings, Inc., is a Delaware corporation with its principal place of business in Boston, Massachusetts.

36.     Defendants FanDuel and DraftKings are authorized to conduct business and do conduct business throughout the State of Ohio.

37.    This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States. This Honorable Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332 (D), because the proposed class consists of 100 or more members; the amount in controversy exceeds five million ($5,000,000.00) exclusive costs and interest and minimal diversity exists. This Honorable Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367.

38.    Venue is proper in this district under 28 U.S.C. 1391 because of the substantial part of events or omissions giving rise to Plaintiffs' claims occurred in this district. Ohio is the proper venue.

## FACTUAL BACKGROUND

39.    Defendants are operating an illegal online sports betting business within the State of Ohio.

40.    Defendants accept wagers from bettors for various sporting events using a scheme they created that assigns values (points) based upon the performance of athletes engaged in amateur and professional athletic competitions.

41.    After the sporting events are concluded, Defendants calculate a score using the system they created that awards points based upon the various individual college and professional athletes performance. Defendants then pay the bettors who have the highest total number of points.

42.    Plaintiff, Scott Tyler, is an individual who has utilized FanDuel's website. He has incurred monetary losses as a result of said use. Thus, Defendant FanDuel is indebted to

the Plaintiff Tyler for, or received to the Plaintiff Tyler's use, the money so lost and paid, or converted the goods won of the Plaintiff Tyler to the Defendant FanDuel's use.

43.     Plaintiff, Owen McGrew is an individual who utilized DraftKing's website. He has incurred monetary losses as a result of said use. Thus, Defendant DraftKings is indebted to Plaintiff McGrew for, or received to Plaintiff McGrew's use, the money so lost and paid, or converted the goods won of the Plaintiff McGrew to the Defendant DraftKing's use.

44.     Defendants are able to operate their websites because they market and represent DFS as a game of skill, like chess or the stock market. It is also similar to pari-mutuel horse race wagering that players compete against each other for prize pools and Defendants take their fee from the prize pool itself.

45.     Plaintiffs allege that gaming on FanDuel's and DraftKing's platform requires very little or no skill and that the outcome therefore "is determined largely by chance."  In fact, many of FanDuel and DraftKings customers lack even a rudimentary understanding of sports, or betting strategy in general, and yet participate in FanDuel's and DraftKing's operations, and lose and win based on pure luck.

46.     Defendants' sports betting scheme is a game of chance that involves little skill. The chance element predominates over any skill set.

47.     Defendants' sports wagering scheme involves selecting a set number of athletes that will play in a single sporting event.

48.     Defendants establish a point system that correlates with the athletes' performance during a single athletic event.

49.     Defendants determine which athletes its bettors can select and assigns a handicap (spread) based upon the athletes' perceived potential to score points.

50.     Defendants eliminate almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular waging event.

51.     By establishing a "spread" for each athlete and limiting the number of athlete's the bettors can use, bettors are engaging in a gambling scheme predominately based upon chance.

52.     Ohio's penal law and civil law (and the UIGEA) prohibit Defendants'' sports betting scheme because it is a game of chance.

53.     According to a survey conducted by the Sports Business Journal, only 1.3% of players realized gains from their participating in online fantasy sports.[6]

54.     DFS, including the sports betting schemes implemented by Defendants, return casino-type "odds" and involve little skill.

55.     A player may win with a randomly generated roster, just as one may win with a carefully curated roster.

56.     Defendants' gambling scheme is a game of chance because an individual athlete's performance (especially in **one** game) will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, or other off field circumstances.

---

[6] http://www.sportsbusinessdaily.com/Journal/Issues/2015/07/27/Opinion/From-the-Field-of-Fantasy-Sports.aspx.

57.     Bettors have no measure of control over all the variables that affect the performance of the college and professional athletes, rendering the Defendants'' scheme a game of chance.

58.     Defendants represent that their gambling scheme is not illegal.

59.     Defendants' representation that the UIGEA legalized bookmaking and gambling under the guise of "fantasy sports" is false and misleading.

60.     The UIGEA did not legalize fantasy sports, it merely provided an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

61.     The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

62.     Under the UIGEA's definition, unlawful internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law.

63.     Ohio law prohibits sports betting schemes, including FanDuel's and DraftKing's scheme, and prohibit Defendants from accepting payments from or entering into contracts with persons in Ohio.

**INVALIDITY OF ARBITRATION PROVISION AND TERMS OF USE**

64.     Defendant's Terms of Use is not a valid, enforceable contract.

65.     Plaintiffs and the class were fraudulently induced into placing money onto Defendants because it was supposed to be a fair game of skill, but instead is no more than a game of chance, thus illegal gambling under Ohio law.

66.     The so-called "Terms of Use" do not constitute a valid, mutual agreement because the promises made by Defendants are illusory. Indeed, there is no restriction on Defendants' ability to terminate the "agreement" or to refuse to perform. For example, the so-called "Terms of Use" provide that Defendants and related individuals such as officers and directors are released from any liability for any claim by the user "whatsoever": By entering into a Contest or accepting any prize, entrants, including but not limited to the winner(s), agree to indemnify, release and to hold harmless Defendants, its parents, subsidiaries, affiliates and agents, as well as the officers, directors, employees, shareholders and representatives of any of the foregoing entities (collectively, the "Released Parties"), from any and all liability, claims or actions of any kind whatsoever, including but not limited to ... [examples of various types of liability listed].

67.     Another reason why the so-called "Terms of Use" is an illusory contract is that it purports to reserve to Defendants the right to deny service to any user for any reason "whatsoever": "Defendants reserve the right, in their sole and absolute discretion, to deny any contestant the ability to participate in head-to-head contests for any reason whatsoever." Thus, Defendants are not bound to any performance obligation.

68.     Yet another reason why the so-called "Terms of Use" is an illusory contract is that it purports to give Defendants the right, "without prior notice," to "revoke any or all of your rights granted hereunder." Thus, once again, Defendants are not bound to any performance obligation.

69.     The Terms of Use purport to require arbitration, but gives Defendants the exclusive right to revoke the arbitration provision because it states that "Any claim or dispute between you and Defendants that arises in whole or in part from the Terms of Use, the Website

or any Contest shall be decided exclusively by a court of competent jurisdiction located in…" either New York (FanDuel) or Suffolk County, Massachusetts (DraftKings).

70.     In addition, a user only has to check a box saying he or she has read the Terms of Use to sign up for the website, and the deposit of money and entry into contests is done through separate transactions.

71.     The Terms of Use are procedurally and substantively unconscionable.

72.     As a direct and proximate result of the actions described above, Plaintiffs and members of the proposed class have been damaged.

## CLASS ALLEGATIONS

73.     A class action is the proper form to bring Plaintiffs' claims under Federal R. Civ. Proc. 23. The potential class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the classes.

74.     This action satisfies all of the requirements of Federal R. Civ. Proc. 23, including numerosity, commonality, typicality, adequacy, predominance and superiority.

75.     Numerosity: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. News accounts discuss how millions of users compete on the websites of Defendants.

76.     Commonality:   the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these

14

questions will resolve the class wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a) Whether Plaintiffs and members of the class have entered into contracts with Defendants within the past eight (8) years.

b) Whether such contracts are *per se* void, pursuant to Ohio law;

c) Whether Plaintiffs and members of the Class paid monies to Defendants in consideration of those contracts;

d) Whether Defendants' operations are a game of chance under all applicable laws and rules;

e) Whether Defendants' operations violate Ohio criminal law;

f) Whether Defendants' operations violate Ohio civil law;

g) Whether Plaintiffs and members of the Class are entitled to restitution and entitled to recovery of lost wagers from Defendants,

h) Whether Defendants fraudulently induced Plaintiffs and the proposed Class Members into using their website under false pretenses, through material misrepresentations or material omissions;

i) Whether Defendants converted Plaintiffs' funds;

j) Whether Defendants have been unjustly enriched;

k) Whether Plaintiffs have been damaged;

l) Whether Defendants are required to disgorge all monies received as a result of illegal gambling in violation of Ohio law;

m) Whether consumers were harmed by Defendants' actions as described above; and

15

n) Whether the Terms of Use are unconscionable, illusory, fraudulent or otherwise invalid;

77. Typicality: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, was induced to use Defendants' sites based on False and misleading advertisements that DFS was a game of skill when, in fact, it is a game of chance, thus constituting illegal gambling under Ohio law.

78. The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other class members; and Plaintiffs' claims and those of the proposed Class are based upon the same legal theories, and arise out of the same practices and course of conduct engaged in by Defendants. Plaintiffs have an interest in seeking compensation from Defendants on behalf of all Class members.

79. Further, the representative Plaintiffs' damages arise out of nearly identical and repetitive policies and practices engaged in by Defendants.

80. Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

81. Superiority: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and

expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical.

82.     The nature of this action and the nature of Ohio laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

83.     The proposed Class is described as follows:

> **"All persons in the State of Ohio who participated in Defendants' DFS, deposited money into a FanDuel's and DraftKing's account, and competed in any contest."**

84.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to modify, amend, add or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

85.     Excluded from the Class are:

    a.     Defendants and any entities in which Defendants have a controlling interest;

17

b.  Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.  Any attorneys representing the Plaintiffs or the Class.

## COUNT I – VIOLATION OF OHIO REVISED CODE §3763: GAMING

86.  Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

87.  Ohio Revised Code §3763: Gaming provides, in pertinent part, as follows:

3763.01(A) Gaming contracts void: All promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon  a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void.

3763.02 Money lost at games may be recovered - exceptions : If a person, by playing a game, or a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit.

3763.03 Sufficiency of allegations in pleading: In the prosecution of an action under section 3763.02 of the Revised Code, the plaintiff need only allege that the defendant is indebted to the plaintiff for, or received to the plaintiff's use, the money so lost and paid, or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him, without setting forth the special matter.

3763.04 Suit by third party: If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

18

88. Defendants' contracts for DFS are not based upon skill, but instead constitute a game of chance and, thus illegal gambling under Ohio State law. As such, those contracts violate Ohio Revised Code §§2915.01, *et* seq. and 3763 and, therefore, are void as a matter of law.

89. As to Plaintiffs, and those similarly situated, Defendants are indebted to the Plaintiff for, or received to the Plaintiffs' use, the money so lost and paid, or converted the goods won of the Plaintiffs to the Defendants' use.

90. As a direct and proximate result of Defendants' violation of Ohio Revised Code §§2915.01 *et seq* and 3763, Plaintiffs and the proposed class were damaged and are entitled to recover all monies lost as a result of Defendants' void gaming contracts on behalf of themselves and all others, as allowed under Ohio revised Code §3763.04, as well as punitive damages.

91. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class have suffered damages and continue to suffer damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00) and to be determined more precisely at trial.

## COUNT II - UNJUST ENRICHMENT

92. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

93. Defendants have improperly and wrongfully taken possession of, profited and/or encumbered money from Plaintiffs from an illegal gambling scheme, i.e. DFS

94. By their actions in receiving payment and money from persons participating in the illegal gambling scheme known as DFS a benefit is conferred upon Defendants that

Defendants are not entitled to and Defendants are aware of such benefit; and such benefit was conferred, premised on fraud, misrepresentation and/or bad faith.

95.     By Defendants' improper and wrongful procuring of money under void gaming contracts, Defendants are financially unjustly enriched to the commensurate financial and economic detriment of Plaintiffs and the Class.

96.     Defendants accepted and retained the benefit conferred upon them, despite their knowledge that it is illegal to participate in illegal gambling in the State of Ohio and accept monies under a void gaming contract.

97.     Retaining the non-gratuitous benefits conferred upon Defendants was unjust and inequitable. Therefore, Defendants are liable for the disgorgement and payment of restitution of the benefits it retained, with applicable interest.

98.     There is no enforceable agreement or contract that conflicts with Plaintiffs' ability to recover under this cause of action.

99.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class have suffered damages and continue to suffer damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00) and to be determined more precisely at trial.

## COUNT III - CONVERSION

100.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

101.     Defendants have and continue to improperly and wrongfully exercise dominion and control over Plaintiffs' and the Class members' personal property, namely fees and monies lost while participating in Defendants' DFS, that have been improperly and illegally taken and procured as a result of a void gaming contract, i.e. illegal gambling.

102.     Plaintiffs and the Class had, and continue to have, an ownership interest in the fees and monies they paid to Defendants as a result of the void DFS gaming contract, i.e. illegal gambling.

103.     Defendants have and continue to improperly and wrongfully exercise dominion and control over Plaintiffs' and the Class members' personal property, i.e. money, for a significant and indefinite period of time, and Plaintiffs and the Class members are harmed by Defendants' conduct.

104.     As a direct and proximate result of Defendants' conversion, Plaintiffs and the Class members have suffered damages and continue to suffer damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00) and to be determined more precisely at trial.

## COUNT IV – ILLEGAL GAMBLING PURSUANT TO O.R.C. 2915

105.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

106.     Upon information and belief, Defendants engaged in a pattern and practice of making false and misleading representations, in which they created, promoted and fraudulently induced persons to participate in a scheme of chance and/or game of chance, thereby engaging in illegal gambling in violation of Ohio's penal law.

107.     Defendants engaged in such pattern and practice knowingly and with the purpose of depriving Plaintiffs of property such that Defendant knowingly obtained and/or exerted control over Plaintiffs' property.

108.     As a direct and proximate result of Defendants' illegal gambling in violation of O.R.C. 2915, Plaintiffs and the Class members have suffered damages and continue to suffer

damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00) and to be determined more precisely at trial.

## COUNT V – OHIO CORRUPT PRACTICES ACT O.R.C. 2923.31 *ET SEQ*

109.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

110.    Defendants each constitute an "enterprise" as they are a partnership, limited partnership or corporation organized under the laws of Delaware.

111.    "Corrupt activity" includes engaging in illegal gambling under Revised Code Section 2915.02.

112.    Defendants' conduct constitutes a pattern of corrupt activity because they have, upon information and belief, engaged in a pattern and practice of engaging in illegal gambling, and perpetuated a false impression in Plaintiffs that Plaintiffs and other consumers falsely believed they were participating in a game of skill – not a scheme of chance and/or game of chance. Defendants engaged in such pattern and practice knowingly and with the purpose of depriving Plaintiffs of property such that Defendants knowingly obtained and/or exerted control over Plaintiffs' property.

113.    As a result of Defendants' conduct, the Plaintiffs and the Class have been injured, including economic losses and other damages.

114.    Section 2923.34 of the Ohio Revised Code entitles Plaintiffs who establish the elements of an Ohio Corrupt Practices Act violation to an order imposing reasonable restrictions upon the future activities or investments of any Defendant, including, but not limited to, restrictions that prohibit the Defendants from engaging in the same type of endeavor as the enterprise in which the defendants were engaged in,  to the actual damages each has sustained,

which may be tripled if proved by clear and convincing evidence, and to costs and reasonable attorney fees.

115.    As a direct and proximate result of Defendants' corrupt practices, Plaintiffs and the Class members have suffered damages and continue to suffer damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00) and to be determined more precisely at trial.

## COUNT VI – FRAUDULENT INDUCEMENT

116.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

117.    Plaintiffs claim that Defendants committed fraud at the formation of the online contract to participate in DFS.

118.    Defendants, by both acts of omission and commission, made false statements concerning material facts about their DFS. At the time that Plaintiffs and Class members entered into the online agreement to participate in DFS, Defendants falsely represented that their DFS was a game of skill and, therefore legal, when, in fact, the Defendants' DFS that they have created, promote and perpetuate is a scheme of chance and/or a game of chance which violates both Ohio criminal and civil law. These false misrepresentations induced Plaintiffs and the Class members to participate in Defendants' DFS wherein Defendants benefitted financially to Plaintiffs and the class members' financial detriment.

119.    Specifically, as detailed above and throughout herein, Defendants represented that their DFS was not gambling and was legal under applicable Ohio state and federal laws.

120.    Defendants knew at the time Plaintiffs and the Class members opened their account with Defendants that the statements, acts and omissions regarding the DFS were false and/or misleading.

23

121.    Defendants intended that Plaintiffs and the Class members be induced by their false statements so Plaintiffs and the Class members would pay money to participate and play DFS.

122.    Plaintiffs and the proposed Class acted in reliance on the false, material representations and omissions made by Defendants, which has caused them to incur damages.

123.    Plaintiffs and the proposed Class would not have deposited money or engaged in any activity on Defendants' websites if they had known that the services for DFS offered by Defendants were illegal in nature.

124.    Defendants were aware that the legality of the games was a material fact inducing Plaintiffs and the proposed Class to give them money in exchange for services and agreeing to the alleged contract.

125.    As a result of Defendants' fraudulent representations and fraudulent omissions, Plaintiffs and the proposed Class were induced into a contract that they otherwise would not have made and suffered financial injury, harm and damages as described in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed Class pray for relief and judgment against Defendants, as follows:

a.    For an order certifying the Class, appointing Plaintiffs and their counsel to represent the Class and notice to the Class to be paid by Defendant;

b.    For damages suffered by Plaintiffs and the proposed Class members;

c.    For restitution to Plaintiffs and the proposed Class members of all monies wrongfully obtained by Defendants;

d.    For injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, illegal, and/or deceptive practices alleged in the Complaint;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendants' past conduct;

f. For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g. For Plaintiffs' costs incurred;

h. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i. For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

Respectfully submitted,

/s/ Thomas J. Connick
Thomas J. Connick (0070527)
Connick Law, LLC
25550 Chagrin Blvd., Suite 101
Cleveland, OH 44122
PH: (216) 364-0512
FX: (216) 609-3446
tconnick@connicklawllc.com
*Attorney for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

/s/ Thomas J. Connick
Thomas J. Connick (0070527)